UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| JENNIFER A. CONNORS, | \| |
| PLAINTIFF | \| |
| v. | \| |
| | \| CASE NO.   2:10-cv-94 |
| DARTMOUTH HITCHCOCK MEDICAL CENTER, | \| |
| DARTMOUTH MEDICAL SCHOOL, | \| |
| MARY HITCHCOCK MEMORIAL HOSPITAL, | \| |
| DARTMOUTH-HITCHCOCK CLINIC and | \| |
| TRUSTEES OF DARTMOUTH COLLEGE, | \| |
| DEFENDANTS | \| |

### *PLAINTIFF'S MOTION FOR LEAVE TO TAKE DEPOSITION IN EXCESS OF PRESUMPTIVE LIMIT*

Plaintiff moves the Court for an order permitting her to take depositions of more than the number of witnesses permitted under Fed.R.Civ.P. 30 (a). The rule permits a party to seek leave of the Court when she requires more than ten depositions.

Plaintiff informed defendants that she requires more than ten depositions to assemble her evidence and complete her case. Nine depositions have been taken and five additional depositions are scheduled for a total of fourteen depositions. But defendants refuse to schedule additional depositions beyond the fourteen, asserting "enough is enough." [1]

Accordingly, plaintiff petitions the Court for permission to take additional depositions, for the reasons expressed herein. [2]

---

[1] The email correspondence is attached as Exhibit 1.

[2] Plaintiff has not noticed the depositions yet. Her written requests were informal; defendants rejected them. Please refer to the email correspondence (Exhibit 2).

Watts Law Firm PC, PO Box 270, Woodstock, VT 05091
Tel: (802) 457-1020 Fax: (802) 432-1074 Email: wattslawfirmpc@gmail.com

Page 1 of 9

**BACKGROUND**

Plaintiff brought the present matter under the Americans with Disabilities Act because the defendants, as her former employers, mistreated and fired her based on her disability. She completed medical school and a graduate medical residency in pediatrics prior to entering defendants' graduate medical education program in psychiatry. She entered defendants' program with the objective of becoming a child psychiatrist.

Defendants hired plaintiff in 2006 with the knowledge that she had Attention Deficit Hyperactivity Disorder ("ADHD"). The disability is a mental condition that manifests itself, *inter alia*, in inattentiveness, over-activity, impulsivity, or a combination. Medication and therapy control the symptoms.

Defendants agreed to provide reasonable accommodations to enable plaintiff to perform in her role as resident physician.

Her time at defendants' institutions lasted for three years, June 2006 to July 2009. Unfortunately, there were occasions when defendant refused to provide reasonable accommodations for plaintiff. Defendants' failure to provide reasonable accommodations appear to have arisen from their perception that ADHD did not cause what they also believed were plaintiff's performance difficulties. Defendants' beliefs, as such, constituted bias against her because of her disability. [3]

On the occasions when defendant refused to accommodate plaintiff's disability, they claim that her performance declined. For example, by late February, 2007, while plaintiff

---

[3]  Please see November 20, 2007 email describing defendants' opinion that plaintiff's alleged performance issues were "not illness" related. (Exhibit 3).

Watts Law Firm PC, PO Box 270, Woodstock, VT 05091
Tel: (802) 457-1020 Fax: (802) 432-1074 Email: wattslawfirmpc@gmail.com

Page 2 of 9

was engaged in her post-graduate year 2 ("PGY2"), [4] her supervisors forbid her from attending her medical appointments and filling prescriptions in treatment/management of her condition. During the same period, defendants claimed that plaintiff's performance declined. In particular, defendants concentrated on a procedural oversight in releasing patient documentation and completion of a patient's physical examination. They ignored the fact that her disability and their refusal to provide the reasonable accommodations – medication and management – caused the alleged shortcoming. Defendants then forced plaintiff out of the institution, into an extended administrative leave – for six months.

During the leave, defendants requested that plaintiff return to treat an outpatient because of the severity of the patient's illness absent plaintiff's care. Once plaintiff restore the patient to health, defendant again removed plaintiff from duty under the treat of a "fitness for duty" examination ("FFD"). Defendants failed to renew plaintiff's residency contract and removed from the house officer roster. Defendants forced plaintiff to undergo two FFD's. Both FFD's clear her for duty. In September 2007, defendants extended plaintiff's contract under a "remediation plan" with accommodations related to her condition.

Plaintiff successfully completed the remediation plan and that her performance was excellent. [5] Despite her success, defendants' bias continued to plague her. [6]

---

[4] Plaintiff earned PGY1 credit toward psychiatry training from the University of Utah School of Medicine where she completed her initial residency in pediatrics.

[5] Please refer to her supervisor's (Dr. Coursin) notification to Dr. Green. Exhibit 3.

[6] Dr. R. Green, the program director, intended to fire plaintiff regardless of her performance. Please refer to Exhibit 3.

During periods when defendants reasonably accommodated plaintiff's disability, permitting her to have a private office, prescription medications and therapy, there were no performance issues.

**RULE 30 MOTION**

Plaintiff's obligation, here, is to prove that defendants' bias and their deficient treatment, retaliation and termination of her were based upon her disability. Plaintiff will prove her case by presenting evidence that, during periods when defendants reasonably accommodated plaintiff's disability, permitting her to have a regular office, adequate medications and therapy, there were no performance issues. Defendants' bias against plaintiff because of her disability caused their treatment and termination of her.

In order to establish the positive side of her performance during her tenure plaintiff must be able to present the testimony of her supervisors whose evaluations were positive. Plaintiff seeks to present the evaluators' experiences, insights and observations concerning her performance. The testimony will not be cumulative because each "block" of plaintiff's training schedule involved different subject matters, supervisors and non-supervising MD's, patients and circumstances in an evaluation system that is supposed to take into consideration physician trainees' developmental progression toward overall compentency to practice medicine ultimately as an independent physician upon graduation. There is a step-wise progression in responsibility and autonomy through medical training based on a generally standardized curriculum and course that was not provided to plaintiff as would be evidenced in the testimony. (Plaintiff's "Block" Schedule is attached as Exhibit 4).

Plaintiff must also be able to explore, in depth, the nature and circumstances of the

Watts Law Firm PC, PO Box 270, Woodstock, VT 05091
Tel: (802) 457-1020 Fax: (802) 432-1074 Email: wattslawfirmpc@gmail.com

Page 4 of 9

negative observations and complaints against her so that the jury may have a balanced view and fully understand them.  Defendants' presentation is expected to cast the performance issues as patient-threatening, dangerous and unprofessional. There is a concern that the tendency for exaggeration will unfairly mislead the jury against plaintiff.

In essence, plaintiff must demonstrate the she engaged in reasonable trainee performance in the context of unreasonable demands and accusations against her and defendants' failure to accommodate her condition. With depositional examination of defendants' employees who supervised her, plaintiff anticipates presenting a balanced view of the evidence.

Fed.R.Civ.P. 30(a)(1) limits parties to ten depositions without leave of the court or stipulation of the parties. Where the parties have not stipulated to the requested depositions, the rule requires the Court to grant leave for the additional depositions to the extent consistent with Fed.R.Civ.P. 26(b)(2) unless:

> **"(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues."**
> **Fed.R.Civ.P. 26(b)(2).  *Byrd v. District of Columbia*, 259 F.R.D. 1 (D.D.C. 2009)**.

## PROPOSED DEPOSITIONS NOT CUMULATIVE OR DUPLICATIVE

Plaintiff's "Block" Training Schedule identifies 28 supervisors who trained and

Watts Law Firm PC, PO Box 270, Woodstock, VT 05091
Tel: (802) 457-1020 Fax: (802) 432-1074 Email: wattslawfirmpc@gmail.com

Page 5 of  9

evaluated her. She also engaged in consultations with and received guidance from 6-7 administrative officials. Her training occurred at three institutions – Dartmouth Hitchcock Medical Center in Lebanon, New Hampshire; New Hampshire Hospital, a state facility in Concord, New Hampshire; and the Veterans Administration Hospital in White River Junction, Vermont. A number of non-supervisors also expressed allegations against plaintiff, allegations that were later expressed and used as excuses for firing her.

The parties' Initial Disclosures identified 140 individuals who have knowledge of the facts and circumstances of plaintiff's claims and participants in plaintiff's training course. Given the training program and the number of witnesses identified in the Initial Disclosures, the extent of depositional discovery should not be a surprise to defendants.

To date plaintiff deposed nine witnesses including five supervisors, three administrative officials and one treating physician. Five supervisors are currently scheduled and plaintiff awaits confirmation of one additional supervisor, bringing the total to fourteen deponents. Plaintiff seeks to depose nineteen other witnesses, including eleven supervisors and criticizing non-supervisors. She also seeks to depose three administrative officials who dealt with plaintiff's Employee Assistance Plan ("EAP") and human relations matters. The rationale for each deposition is described in Plaintiff's Master Witness List. (Attached as Exhibit 5).

Plaintiff further reduced the list from the Initial Disclosures (140 individuals) and from the total roster of her supervisors and administrative people (66 individuals), down to 23 additional depositions. Many of the proposed depositions will be short, less than an hour.

The documents produced to date demonstrate the number of supervisors and the

Watts Law Firm PC, PO Box 270, Woodstock, VT 05091
Tel: (802) 457-1020 Fax: (802) 432-1074 Email: wattslawfirmpc@gmail.com

Page 6 of 9

variety of positive and negative opinions about plaintiff's performance. They also demonstrate that each training period concentrated on a different subject matter, were taught or trained by different attending physicians and supervisors. In other words, the setting and circumstances for each evaluation were different by virtue of her discursive training course.  The expectations were inconsistent among training sites, settings, and supervisors and did not follow the predictable curriculum or developmental progression by virtue of defendants' negative bias and treatment toward plaintiff.

The vastly different environments at the three facilities and the multiple viewpoints, circumstances and personnel evaluations demonstrate that the proposed depositions would not be cumulative or duplicative. [7]

During certain times during plaintiff's training course, defendant expressed criticisms of her performance.  The accusations are, generally, vague and unsubstantiated. Most of them originated from individuals who have not yet been deposed.  It would be a miscarriage of justice to permit defendants to enter into evidence the third-party hearsay accusations without plaintiff having the right to confront and examine the accusers.

## NO OTHER OPPORTUNITIES TO OBTAIN THE INFORMATION

The information sought through the proposed depositions, as delineated above, is partially available in the written evaluations.  But it would be misleading and unfair to preclude plaintiff from deposing her supervisors, criticizing non-supervisors and administrators because it would only provide the jury with distorted view of the facts and circumstances of the case.  They represent only  a small portion of the evidence relating to

---

[7]    Denoted on "Plaintiff's Master Witness List" (Exhibit 5) as "1" (highest priority) & "2".

defendants' bias, its discrimination against and termination of her.

Plaintiff must have the opportunity to depose each supervisor and criticizing non-supervisor, those with positive and negative reviews of her performance, so that she may support her claims and provide a balanced view to the jury.

Once plaintiff demonstrates that defendants' termination reasons were bogus, the jury will be able to evaluate whether or not defendants' motivation was discriminatory.

**BENEFIT OF PROPOSED DEPOSITIONS OUTWEIGHS THE EXPENSE**

The training program extended across three years. Given the nature of the case and the variations of the training program, the likely benefit of the proposed depositions outweighs the burden or expense of the effort. This truth becomes clear when the needs of the case, the amount in controversy, the importance of the issues at stake in the action and the importance of the discovery in presenting the case or resolving the issues.

The jury must have the full and complete picture of the facts and circumstances. The primary need of the case is to provide plaintiff with the full measure of the evidence. The need of the case is also to enable her to present the full and complete picture to the jury for its deliberations.

Defendants will probably argue that many of the proposed deponents are physicians and employees who serve diseased, injured and dying patients. They will promote the idea that removing the physicians from saving the patients is a medical and financial cost that is intolerable.

But, with a few exceptions, plaintiff's proposed depositions of defendants' physician employees will not exceed one hour. The exceptions are Drs. Ronald Green, Watts, Bolton, Summerall, Kutter, Schwartz and West. Dr. Green was the program director who

Watts Law Firm PC, PO Box 270, Woodstock, VT 05091
Tel: (802) 457-1020 Fax: (802) 432-1074 Email: wattslawfirmpc@gmail.com

Page 8 of 9

recommended plaintiff's termination to the fair hearing committee. The others were more involved with plaintiff's program than the remaining physicians.

It is vital to plaintiff's case to be able to present the proposed witnesses' perceptions and experiences concerning plaintiff's performance during those periods when she was actually provided reasonable accommodations. The depositional evidence relates directly to the discrimination and retaliation claims.

Once the evidence is in the record, and defendants' understand how the puzzle pieces fit the full picture, there will be an enhanced likelihood of resolving the issues without a trial.

## **Conclusion**

Reviewing the rule's standard in light of these circumstances, plaintiff's rationale for exceeding the maximum number of depositions is reasonable and makes sense.

The number of witnesses, if approved, will require an extension of the current pretrial schedule.[8] The current deposition deadline is May 10, 2011 and the trial ready date is June 11, 2011. If approved, plaintiff will file a revised schedule for approval.

DATED:  April 1, 2011          .

                              /s/ Norman Watts
                              Norman E. Watts, Esq.
                              Watts Law Firm, PC
                              PO Box 270
                              Woodstock, VT 05091
                              (802) 457-1020
                              wattslawfirmpc@gmail.com
                              Attorney for Plaintiff

---

[8]  It has been extremely difficult to schedule depositions. Plaintiff's requests for the first group of depositions was transmitted in November 2010; those depositions will not be completed until May, 2011. (Exhibit 2)

Watts Law Firm PC, PO Box 270, Woodstock, VT 05091
Tel: (802) 457-1020 Fax: (802) 432-1074 Email: wattslawfirmpc@gmail.com

Page 9 of  9