UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| JENNIFER A. CONNORS, | \| |
| PLAINTIFF | \| |
| v. | \| |
| | \| CASE NO.   2:10-cv-94 |
| DARTMOUTH HITCHCOCK MEDICAL CENTER, | \| |
| DARTMOUTH MEDICAL SCHOOL, | \| |
| MARY HITCHCOCK MEMORIAL HOSPITAL, | \| |
| DARTMOUTH-HITCHCOCK CLINIC and | \| |
| TRUSTEES OF DARTMOUTH COLLEGE, | \| |
| DEFENDANTS | \| |

### *Plaintiff's Supplemental Proposed Findings of Fact and Conclusions of Law*

PLAINTIFF files the below supplemental proposed findings of fact and conclusions of law:

### Proposed Findings of Fact

1. The Agreement of Appointment between MHMH and Dr. Connors continues from 6/26/06 to 6/25/09. It was a 3-year obligation. The contract clearly states that MHMH agrees to provide a resident training PROGRAM that meets the requirements of ACGME.

2. The ACGME manual, also known as the "Red Book," specifies that resident physicians will perform all duties and accept all reasonable assignments designated by the program director and/or department chair. Reappointment of residents is "dependent upon satisfactory evaluations and fulfillment of program and institutional requirements and availability of positions." According to the evidence, there were no issues with Dr. Connors' evaluations or her fulfillment of institutional requirements. This was another factor that led her to believe that she would be continuing in the program after the 1/28/09 letter.

3. The ACGME issued specific program requirements. They require program directors to "ensure compliance with grievance and due process procedures as set forth in the institutional requirements and implemented by the sponsoring institution. (Exhibit 5, p. 3 @ II.A.4 h.)

4. The Agreement of Appointment specifies that if a "responsible person" determines that a resident's contract will not be renewed for a subsequent training year, MHMH will provide written notice of the determination. There is no evidence that Dr. Green was the "responsible person." Actually, Dr. Bertrand was the "designated institutional officer" ("DIO"). It is reasonable to infer that he was the "responsible person." If so, he was actively reviewing Dr. Connors' status in the program as late as May, 2009. (Exhibit 10).

5. Dr. Connors contends that Dr. Green lacked the authority to dismiss her under the ACGME rules. It is noteworthy that, according to Dr. Connors' testimony, in the spring of 2007, Dr. Green consulted with GME about his options concerning her continuing in the program and whether suspension or dismissal would be appropriate.

6. Although Dr. Green attended the hearing, he did not testify. There is no contrary evidence to Dr. Connors' testimony that Dr. Green consulted with GME about his options concerning her continuing in the program and whether suspension or dismissal would be appropriate. A reasonable conclusion is that even Dr. Green knew he lacked the authority to dismiss residents absent consultation with or approval from GME. There is no evidence that the GME approved Dr. Green's recommendation until the "fair hearing" committee decided against Dr. Connors in late July 2009.

7. The defendants presented no evidence contradicting Dr. Connors' assertion that Dr. Green lacked authority to unilaterally dismiss her.

8.  Plaintiff was misled by a variety of factors, including the ACGME rules, similar "dismissal" threats from Dr. Green, none of which led to discipline and her satisfactory evaluations. Most importantly, the institution encouraged Dr. Connors about continuing in the program throughout the time between 2/28/09 and when she finally filed for a "fair hearing," after consulting with counsel. The evidence supports the conclusion that she could not have been on clear and definite official notice by the time she triggered the "fair hearing."

9.  Dr. Connors testified that she used the term "dismiss" or "my dismissal" in communications with defendants' officials because it was their terminology and she did not want to inflame them while they considered whether she could continue in the residency training program. Her request to the "fair hearing" committee was to reverse Dr. Green's "actions," including his recommendation to dismiss her. Nor did Dr. Connors directly challenge Dr. Green's authority under the ACGME rules, for the same reason.

10. Given the evidence presented at the hearing, noted above, the Court finds that Dr. Green lacked the authority to unilaterally dismiss Dr. Connors. His "dismissal" letter was, actually, notice to Dr. Connors and others that he was recommending her dismissal and would be consulting with GME about the potential of her dismissal from the program as he had on previous occasions when he harbored concerns about Dr. Connors' residency.

11. The only way Dr. Connors or other residents or fellows could be dismissed was by a GME decision. The GME "fair hearing" committee made the decision that constituted dismissal from the program.

12. Had Dr. Connors not implemented the "fair hearing" process, Dr. Green's

recommendation and consultation with GME officials appears to satisfy the recommendation/consultation requirement, ending a resident's participation in the program.

13. Dr. Connors filed her EEOC complaint on 12/7/09.

## Proposed Conclusions of Law

14. Based on the foregoing, the Court concludes that Dr. Green did not dismiss Dr. Connors on 1/29/09. Nor did defendants give her, with the 1/29/09 letter, notice of a clear and official dismissal. Thus, timing for the EEOC 300 day filing rule had not commenced on that date.

15. Rather, the GME "fair hearing" committee had the authority to determine wether Dr. Connors would continue in the program or be dismissed. It rendered its decision on 7/24/09. It was that date that implemented the EEOC filing time schedule.

16. As Dr. Connors filed her EEOC complaint on 12/7/09, she was well within the time requirement for filing her complaint there. Accordingly, defendants' motion for summary judgment is denied.

                                      Respectfully submitted,

                                      JENNIFER A. CONNORS
                                      PLAINTIFF

Dated:   2/7/12   .               /s/Norman E. Watts
                                      Norman E. Watts, Esq.
                                      Watts Law Firm, PC
                                      PO Box 270
                                      Woodstock, VT 05091
                                      Plaintiff's Attorney