UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

| | |
|---|---|
| Jennifer A. Connors,<br>   *Plaintiff*,<br><br>  v.<br><br>Dartmouth Hitchcock Medical Center,<br>Dartmouth Medical School, Mary Hitchcock<br>Memorial Hospital, Dartmouth-Hitchcock<br>Clinic and Trustees of Dartmouth College,<br>   *Defendants*. | §<br>§<br>§<br>§  Civil Action No. 2:10-cv-00094-wks<br>§<br>§<br>§<br>§<br>§<br>§ |

## DEFENDANTS' MOTION *IN LIMINE*

  Defendants Dartmouth Hitchcock Medical Center, Dartmouth Medical School, Mary Hitchcock Memorial Hospital ("MHMH"), Dartmouth-Hitchcock Clinic, and Trustees of Dartmouth College, by and through their counsel, Sulloway & Hollis, P.L.L.C., hereby move *in limine* to preclude plaintiff from offering evidence that: (a) defendants breached any contract with plaintiff by failing to accommodate her alleged disability or that her poor performance was caused by her alleged disability; (b) that defendants breached any contract with plaintiff because they lacked "just cause" to dismiss or non-renew her residency agreement or did not provide her with due process concerning the same; and (c) that defendants breached an implied covenant of good faith and fair dealing. In support of their motion, defendants state as follows:

  1.  Plaintiff commenced this action in April 2010, asserting claims against defendants under the Americans with Disabilities Act of 1990 ("ADA") and state law contract claims. In September 2011, the Court bifurcated the matter such that: (1) a bench trial would be held in early February 2012 to determine whether plaintiff had filed a timely charge of discrimination so as to maintain her claims under the ADA; and (b) a jury trial would begin in early April 2012 as

to her state law contract claims and, possibly, her ADA claims (if the Court determined that plaintiff had filed a timely charge of discrimination). After a February 3, 2012 bench trial, the Court entered judgment in favor of defendants with respect to plaintiff's ADA claims. As such, only plaintiff's state law contract claims remain to be adjudicated.

2.  By way of background, in April 2006, plaintiff and MHMH entered into a Resident/Fellow Agreement of Appointment for graduate training as a psychiatry resident from June 26, 2006, through June 25, 2007. Findings of Fact and Conclusions of Law [Doc. 105] dated February 13, 2012 ("Order") at 1-2. In September 2007, plaintiff and MHMH entered into another Resident/Fellow Agreement of Appointment for graduate training as a psychiatry resident at the PGY-2 [*i.e.*, post-graduate year two] level from September 17, 2007, through January 6, 2008. Order at 2. In January 2008, plaintiff and MHMH entered into a third Resident/Fellow Agreement of Appointment for graduate training as a psychiatry resident at the PGY-3 level from January 7, 2008, through January 6, 2009 (collectively the "Agreements"). Order at 2.

3.  On January 28, 2009, Dr. Ronald Green, the psychiatry residency program director, informed plaintiff that she was "dismissed from our training program" such that she would need to complete her "PGY-4 year elsewhere." Order at 2, 5. In order for her to be eligible for a PGY-4 year elsewhere, Dr. Green advised plaintiff that she would be able to complete her current rotations over the next several weeks. Order at 5. However, plaintiff refused to sign a proposed agreement for the period in question.

4.  Although not a model of clarity, plaintiff claims that defendants (including defendants who are not actual parties to the Agreements) breached "express and/or implied promises of job security, adequate educational and training experiences, appropriate supervision

and counseling, reasonable accommodations to her disability as well as a work environment conducive to performing as a resident physician, all of which were memorialized in defendants' written policies and agreements and discussions between the parties." Second Amended Complaint at ¶ 44. Plaintiff also asserts that there was "insufficient or no just cause that justified discharging plaintiff from the residency program or her employment." Second Amended Complaint at ¶ 46.

5. Putting aside that plaintiff was apparently working without a contract after January 2009, under the Agreements, MHMH promised to provide plaintiff with: (a) an accredited educational program; (b) certain patient support ancillary services; (c) appropriate and readily available supervision; (d) certain employee benefits and insurance; (e) counseling services; (f) a reasonable schedule; and (g) a work environment with adequate and appropriate food services and sleeping quarters, patient support services, and appropriate security. *See* Defendants' Exhibits A-C. Plaintiff's breach of contract claim should be limited to whether MHMH provided the above to her.

6. In particular, plaintiff should be precluded from offering evidence in support of any allegation that defendants failed to accommodate her alleged disability. First, there is nothing in the Agreements concerning the same. Second, the anti-discrimination policies in the so-called Red Book did not create independent contractual obligations between plaintiff and defendants. *Peralta v. Cendant Corp.*, 123 F. Supp. 2d 65, 83-84 (D. Conn. 2000) ("The language of the anti-harassment policy that plaintiff urges as the basis of his implied contract claim does not indicate that defendant is undertaking any contractual obligations towards the plaintiff; rather, it obliges Cendant to comply with federal and state anti-discrimination laws …. Cendant is required to publicize its equal opportunity and anti-harassment policy … in order to

guard against liability under the discrimination laws. As any promises in the policy are general statements of adherence to the anti-discrimination laws, standing alone they do not create a separate and independent contractual obligation"); *Mutua v. Texas Roadhouse Mgmt. Corp.*, 753 F. Supp. 2d 954 (D.S.D. 2010) (granting summary judgment on a breach of contract claim seeking to enforce the anti-discrimination provisions in the employer's employee handbook because the employer already must abide by Title VII and a promise to perform a legal duty is not consideration for a return promise); *Byra-Grzegorczyk v. Bristol-Myers Squibb Co.*, 572 F. Supp. 2d 233, 254 (D. Conn. 2008) (recognizing that an "antidiscrimination policy" does not indicate that an employer is undertaking any contractual obligations towards the employee; rather, it requires the employer "to comply with federal and state antidiscrimination laws"); *Gally v. Columbia University*, 22 F. Supp. 2d 199, 208 (S.D.N.Y. 1998) (stating that a provision in the code of conduct requiring that all students receive fair and equal treatment is "merely a general statement of adherence by [the defendant] to existing anti-discrimination laws[;] [i]t does not create a separate and independent contractual obligation") (citation omitted).

7.    Plaintiff also should be precluded from offering evidence in support of her allegation that there was "insufficient or no just cause that justified discharging plaintiff from the residency program or her employment." First, there is no provision in the Agreements that states that there must be "just cause" for a dismissal/non-renewal of a resident. Moreover, as this Court has already determined, plaintiff received the "due process" set forth in the Red Book concerning her dismissal/non-renewal (*i.e.*, a fair hearing). Order at 7-8. Even if plaintiff is allowed to offer evidence in support of her allegation that there was "insufficient or no just cause" for her dismissal/non-renewal, she should not be permitted to try and make an end-around the dismissal of her ADA claims by offering irrelevant evidence that her poor performance was caused by her

alleged disability or defendants' alleged failure to accommodate the same. *See Nanos v. City of Stamford*, 609 F.Supp. 2d 260, 268 (D. Conn. 2009) (claim alleging wrongful termination due to disability under state law precluded because plaintiff had a statutory remedy under the ADA, even where the court found that plaintiff's ADA claim failed as a matter of law because a "common-law discharge claim is not a valid theory of recovery that plaintiff could fall back on should her ADA claim fail"). *See also Smith v. F.W. Morse & Co., Inc.*, 76 F.3d 413, 429 (1st Cir. 1996) (plaintiff may not pursue a common law remedy where the legislature intended to replace it with a statutory cause of action).

8. Finally, because Count Four (Breach of Covenant of Good Faith and Fair Dealing) does not identify any conduct distinct from that alleged in her breach of contract claim, plaintiff should be precluded from offering evidence concerning defendants' alleged breach of the implied covenant of good faith and fair dealing. *Monahan v. GMAC Mortg. Corp.*, 179 Vt. 167, 187 n.5 (2005) ("we will not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when the plaintiff also pleads a breach of contract *based upon the same conduct*") (emphasis in original). *See Ferriburgh Realty Investors v. Schumacher*, 187 Vt. 309, 322 (2010) ("A breach for violation of the implied covenant may form a separate cause of action than for breach of contract, as long as the counts are based on different conduct"). *See also District Lodge 26, International Association of Machinists & Aerospace Workers, AFL-CIO v. United Technologies Corp.*, 610 F.3d 44, 54-55 (2d Cir. 2010).

Law Offices of
Sulloway & Hollis, P.L.L.C.
Concord, N.H. 03302

Respectfully submitted,

DARTMOUTH HITCHCOCK MEDICAL
CENTER, DARTMOUTH MEDICAL SCHOOL,
MARY HITCHCOCK MEMORIAL HOSPITAL,
DARTMOUTH-HITCHCOCK CLINIC AND
TRUSTEES OF DARTMOUTH COLLEGE

By Their Attorneys,
SULLOWAY & HOLLIS, P.L.L.C.

DATED:  March 16, 2012			By:   /s/ William D. Pandolph, Esq.
						Edward M. Kaplan, Esq.
						William D. Pandolph, Esq.
						9 Capitol Street
						P.O. Box 1256
						Concord, NH 03302-1256
						(603)224-2341
						e-mail:  wpandolph@sulloway.com

## CERTIFICATE OF SERVICE

I hereby certify that this pleading was served on the following persons on this date and in the manner specified herein:  Electronically Served Through ECF:  Norman E. Watts, Esq.

DATED:  March 16, 2012			By:   /s/ William D. Pandolph, Esq.
						William D. Pandolph, Esq.