UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| JENNIFER A. CONNORS, | |
| PLAINTIFF | |
| v. | |
| | CASE NO. __2:10-cv-94__ |
| DARTMOUTH HITCHCOCK MEDICAL CENTER, | CASE NO. __2:12-cv-51__ |
| DARTMOUTH MEDICAL SCHOOL, | |
| MARY HITCHCOCK MEMORIAL HOSPITAL, | |
| DARTMOUTH-HITCHCOCK CLINIC and | |
| TRUSTEES OF DARTMOUTH COLLEGE, | |
| DEFENDANTS | |

### *PLAINTIFF'S PROPOSED JURY CHARGES*

[**Please Note:**  These proposed charges are intended to accompany the standard instructions concerning burden of proof, witness credibility, inferences from evidence, Vermont pattern direct and circumstantial evidence, objections, etc.]

**Disability Discrimination**

Dr. Connors contends that the defendants intentionally discriminated against her in violation of Vermont's Fair Employment Practices Act.  It is unlawful for an employer to intentionally discriminate against a qualified individual with a disability in regard to job application procedures, hiring, advancement, discharge, employee compensation, job training, and other terms, conditions, or privileges or employment because of that person's disability.

Dr. Connors also asserts that defendants retaliated against her for requesting, during her training program, reasonable accommodations for her disability.

Defendants deny the claim and assert the they dismissed Dr. Connors for legitimate,

Watts Law Firm PC,  PO Box 270,  Woodstock VT 05091-0270
Tel (802) 457-1020   Fax (802) 432-1074  Email: WattsLawFirmPC@gmail.com

Page 1 of  14

nondiscriminatory reasons, as its witnesses have testified.

It is your responsibility to determine whether Plaintiff has proven her claim by a preponderance of the evidence. [1]

In accordance with the standard I described, to establish a *prima facie case* under the statute Dr. Connors must produce evidence that establishes, by a preponderance of the evidence, that: (1) her employer is subject to the law; (2) she was disabled within the meaning of the provision; (3) she was otherwise qualified to perform the essential functions of her job, with or without reasonable accommodations; and (4) she suffered adverse employment action because of her disability. [2]

Under the statute, an "adverse employment action" may be dismissal from work or other forms of discipline.

The Court has determined that defendants are subject to the Fair Employment Practices Act. The parties do not dispute the second or fourth elements of the *prima facie* case. That means that Dr. Connors must produce evidence that she was otherwise qualified to perform the essential functions of her job, with our without reasonable accommodations.

If Dr. Connors fails to persuade you that she was otherwise qualified to perform the essential functions of her job, with our without reasonable accommodations, that ends your deliberations on the discrimination claim.

If Dr. Connors satisfies you, based on the evidence, that she was otherwise qualified to perform the essential functions of her job, with or without reasonable accommodations,

---

[1] 42 U.S.C. §12112(a); 29 C.F.R. §1630.4.

[2] *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir.2006).

Watts Law Firm PC, PO Box 270, Woodstock VT 05091-0270
Tel (802) 457-1020   Fax (802) 432-1074  Email: WattsLawFirmPC@gmail.com

Page 2 of 14

then the burden shifts to the defendants to produce evidence that they dismissed Dr. Connors because of legitimate, non-discriminatory reasons.

If they are successful, in your view, based on the evidence, then Dr. Connors' must produce evidence that defendants' reasons for dismissing her were pretext, or an excuse, for disability discrimination.  If you determine that defendants' expressed reasons for dismissing Dr. Connors from the residency are accurate and justify Dr. Connors' dismissal, then your deliberations on this point have concluded and you must issue a verdict for defendants on this point.

If you determine that defendants' reasons for dismissing Dr. Connors from the residency program were pretext, or an excuse, for disability discrimination, then you must find for Dr. Connors and issue a verdict in her favor.  If that occurs, you must advance to the issue of damages I will discuss in a moment.

<u>Reasonable Accommodation</u>

Dr. Connors also claims that defendants failed to provide her with reasonable accommodations for her disability, causing her to experience difficulties in training.  An employer who fails to provide a reasonable accommodation for an employee with a disability may violate the Act.

Dr. Connors may state a *prima facie* case for the failure to accommodate claim by demonstrating that (1) she is a person with a disability under the meaning of the statute; (2) her employer, the defendants, were aware of her disability; (3) with reasonable accommodations, she could perform the essential functions of the job at issue; and (4) the

employer refused to make the accommodations. [3]

The parties do not dispute that Dr. Connors made a sufficient showing that she was disabled during her residency training, that the statute covered the defendants or that they had notice of her disability.

The issue for your consideration is whether she made a sufficient showing that, with reasonable accommodation, she could perform the essential functions of the training program and that defendants failed to make the appropriate accommodations.

As plaintiff, Dr. Connors bears the burdens of both production and persuasion as to the existence of some accommodation that would allow her to perform the essential functions of her employment. Dr. Connors contends that she performed the essential functions of the training program when defendants provided accommodations in the form of time to meet with her therapist for her learning disability and receive prescriptions for her disability medication. She also testified that she needed a private office where she could provide therapy for patients and prepare her clinical notes, as well as the usual security and communications devices.

The term "essential functions" encompasses the fundamental job duties of the employment position, or, as here, the training program. [4] Evidence of whether a particular job duty constitutes an essential function includes, among others, the employer's judgment as to what functions of a job are essential, or, as in a case such as this one, from an accrediting organization such as the Accreditation Council for Graduate Medical Education

---

[3] *McBride v. BIC Consumer Products Mfg. Co., Inc,* 583 F.3d 92, 97 (2nd Cir. 2009).

[4] 29 C.F.R. § 1630.2(n)(1); *Rodal v. Anesthesia Group of Onondaga, P. C.*, 369 F.3d 113, 120 (2d Cir.2004).

Watts Law Firm PC, PO Box 270, Woodstock VT 05091-0270
Tel (802) 457-1020   Fax (802) 432-1074   Email: WattsLawFirmPC@gmail.com

Page 4 of 14

("ACGME").

The Act envisions an 'interactive process' by which employers and employees work together to assess whether an employee's disability can be reasonably accommodated. [5] Discrimination includes not making "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." It also includes an employer's failure to engage in the interactive process to establish reasonable accommodations for the employee's disability. [6]

If you find that Dr. Connors failed to establish that she could perform the essential functions of her training program with reasonable accommodations, you must find for the defendants and render a verdict in their favor.

If you determine that Dr. Connors satisfied her burden to produce persuasive evidence that defendants either failed to engage in the interactive process to establish reasonable accommodations or that they refused to provide reasonable accommodations, then you must find for Dr. Connors and consider an award of monetary damages.

Retaliation

Dr. Connors also asserts a claim for illegal retaliation against her for requesting reasonable accommodations and/or for complaining that defendants were not providing reasonable accommodations for her learning disability. She need not succeed on the merits of her discrimination claims in order to be protected from defendants' retaliatory actions.[7]

---

[5]   42 U.S.C. § 12111(9)(B); *Jackan v. N.Y. State Dep't of Labor*, 205 F.3d 562, 566 (2d Cir.2000).

[6]   *McBride, supra,* 104 (citation omitted).

[7]   *Gallipo v. City of Rutland*, 163 Vt. 83 (Vt. 1994) (citing *Davis v. State Univ. of N.Y.*, 802 F.2d 638, 642 (2d Cir.1986) (finding of unlawful retaliation not dependent on merits of underlying discrimination charge)).

Watts Law Firm PC, PO Box 270, Woodstock VT 05091-0270
Tel (802) 457-1020   Fax (802) 432-1074   Email: WattsLawFirmPC@gmail.com

Page 5 of 14

A *prima facie* case for retaliatory discrimination requires plaintiff to show that (1) she was engaged in protected activity, (2) her employer was aware of that activity, (3) she suffered adverse employment decisions, and (4) there was a causal connection between the protected activity and the adverse employment action. [8]

For purposes of a *prima facie* case, the parties do not dispute elements one through three. Concerning the fourth element, Dr. Connors may establish a link indirectly by showing that the timing of her requests or complaints, or other relevant circumstances, and the retaliatory actions, dismissal, are suspect. [9]

Examples of actions that might establish a link to demonstrate retaliation might be a pronounced increase in negative reviews and careful scrutiny of a plaintiff's performance.

If Dr. Connors establishes the *prima facie* case of retaliation, defendants must articulate a legitimate, non-discriminatory reason for the adverse employment action at issue in the case. [10]

If defendants meet their burden, then Dr. Connors must produce evidence that is sufficient for you to conclude that their explanation is merely pretext for impermissible retaliation. [11] If you conclude that the defendants' articulated explanation was pretext, then you must find for Dr. Connors, that defendants retaliated against her, and render a verdict for her. In that instance, you must consider awarding monetary damages for Dr.

---

[8]    *Id.* (citing *Manoharan v. Columbia Univ. College of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir.1988)).

[9]    *Id. (citing In re McCort,* 162 Vt. 481 (1994)).

[10]   *Treglia v. Town of Manlius*, 313 F.3d 713, 721 (2nd Cir 2002).

[11]   *Id.*

Watts Law Firm PC,  PO Box 270,  Woodstock VT 05091-0270
Tel (802) 457-1020    Fax (802) 432-1074  Email: WattsLawFirmPC@gmail.com

Page 6 of  14

Connors.

## **PERSONNEL POLICIES CREATING A CONTRACT**

Plaintiff asserts a breach of an implied employment contract claim against defendant. Plaintiff's claim is based upon defendants' written employment and personnel policies, many of which are in evidence.

In order to resolve plaintiff's claim, you must make two determinations:

**First,** you must determine whether defendants' written policies and practices actually created an implied contract between the parties; and

**Second**, if you find that an implied contract existed, you must then determine whether defendants breached that contract.

I will now explain to you in more detail the two determinations you must make.

<u>Whether an Implied Contract Existed</u>

Dr. Connors was an "at will" employee of defendants. In general, "at will" employment means that either the employer or the employee may terminate the employment relationship at any time and for any reason, or for no reason at all. For this reason, an "at will" employee may not ordinarily maintain an action for breach of an employment contract because there is no promise of continued employment.

An exception occurs when employers obligate themselves to follow certain procedures before discharging their "at will" employees, which employers may do in order to give their employees an expectation of some job security. An employer may create such obligations in its written handbooks and policies if the employer intends for those statements to govern its commitments, and if the employees have a legitimate expectation

Watts Law Firm PC,  PO Box 270,  Woodstock VT 05091-0270
Tel (802) 457-1020    Fax (802) 432-1074  Email: WattsLawFirmPC@gmail.com

Page 7 of  14

that the policies will be followed.  An employer may also create such obligations by following unwritten practices that are clearly established and uniformly and consistently applied throughout the company, and if those practices create legitimate expectations on the part of the employees.  Any obligations created in this way are referred to as "implied" terms of an employment contract.

In this case, Dr. Connors claims that defendants modified her at-will employment status by adopting written policies and unwritten practices that established a "corrective action procedure" under which employees were led to believe that they would be warned about all but the most serious performance issues before being subject to discharge.  Dr. Connors further contends that the circumstances of her In cast did not warrant a discharge.

You must first determine whether defendants' personnel policies, including their general policies, the so-called "Red Book," their and the Graduate Medical Education guidelines actually created an implied contract between the parties; that is, whether the policies contain enforceable and binding obligations.  Did defendants modify Dr. Connors' "at will" employment by adopting written policies or unwritten practices?  Dr. Connors contends that defendants' policies contain binding promises that there would be job security, adequate educational and training experiences, appropriate supervision and counseling, reasonable accommodations to her disability as well as a work environment conducive to performing as a resident physician, all of which were memorialized in defendants' written policies and agreements and discussions between the parties.  Defendants' policies warranted a safe, accommodating work environment free from harassment and unfair treatment.

Dr. Connors also contends that defendants failed to provide the safe, accommodating work environment free from harassment and unfair treatment.  She maintains that she could only be terminated if defendants had provided a conducive environment for her to perform according to their standards and for good cause after proper disciplinary actions.

You must determine whether a contract existed from the perspective of a reasonable employee.  That is, you must decide whether a reasonable employee would believe that defendants intended its policies and practices to create the enforceable and binding obligations.

You must first determine whether the policies and practices apply to the plaintiff.  If you find that the plaintiff is within the class of employees that the policies and practices cover, then they may have created an implied contract between the plaintiff and the defendants.  On the other hand, if you find that the plaintiff is not within the class of employees that the policies cover then they do not create a contract between the plaintiff and the defendants, and the plaintiff's implied contract claim fails.

If you find that defendants' policies and practices apply to the plaintiff, then you must decide whether a reasonable employee reading the policies would believe that they created a binding promise.  In making this decision, you should look at the policies as a whole.  By that I mean you should consider all the documents describing the policies.

Here are some provisions that, if present, tend to indicate that the policies created a binding promise or, if not present, that tend to indicate they were not intended to be binding.

    a.    Any statements promising or implying job security to those employees who

Watts Law Firm PC,  PO Box 270,  Woodstock VT 05091-0270
Tel (802) 457-1020   Fax (802) 432-1074  Email: WattsLawFirmPC@gmail.com

Page 9 of 14

satisfactorily perform their duties.

      b.      A definite and comprehensive progressive discipline policy under which employees are entitled to specified warnings prior to termination.  A definite and comprehensive termination policy that, for example, identifies different types of terminations, or identifies specific acts or offenses that will justify termination.

      c.      Whether the policies apply to all classes of employees or just resident physicians.

      d.      You may also consider any other specific policy that would lead a reasonable employee to believe that the defendant intended or did not intend the policies to create an enforceable and binding promise.

As I instructed you, you should consider the policies as a whole in making your determination– and no single factor standing alone is determinative.

<u>Policies' Preparation and Distribution</u>

The next matter you must consider is the policies preparation and distribution. You must now decide whether their preparation and distribution would create a reasonable expectation in defendants' employees that they were intended to govern the rights and duties of defendants' employees.  In considering their preparation and distribution, you should consider the following factors. No single factor standing along is determinative and you should consider all of the evidence relating to their preparation and distribution in making your decision.

    --      Consider whether defendants employ a substantial number of employees.

    --      Consider whether the policies were widely distributed.  For example, if the

Watts Law Firm PC,  PO Box 270,  Woodstock VT 05091-0270
Tel (802) 457-1020    Fax (802) 432-1074   Email: WattsLawFirmPC@gmail.com

Page 10 of  14

defendant distributed the policies to all or a substantial number of its employees, that is an indication it was intended to be binding. On the other hand, if the employer limited distribution – to only a small group of employees, such as upper management, that would suggest the policies were not intended to be binding.

-- Consider whether the defendants' policies were made available to employees for their inspection or whether access to the policies were restricted. If the defendants' policies were made available to employees for their inspection, that is an indication that the defendants' policies were intended to be binding; if access to the defendants' policies was restricted, that is an indication that the defendants' policies were not intended to be binding.

-- Whether the defendant required employees to acknowledge receipt of the policies, for example, by signing an acknowledgment form. If so, that is an indication that the defendant intended them to be binding; if not, that is an indication that they were not intended to be binding.

-- Whether there are any other circumstances concerning the preparation and distribution of the policies that would lead a reasonable employee to believe that the defendant intended or did not intend them to create enforceable and binding obligations.

Again, remember that none of these factors standing alone is determinative. You should consider all the evidence relating to the policies preparation and distribution in reaching your decision.

In summary, to determine whether defendants' policies created an implied contract between the parties based on the terms of the policies, you must consider the foregoing

Watts Law Firm PC,  PO Box 270,  Woodstock VT 05091-0270
Tel (802) 457-1020    Fax (802) 432-1074   Email: WattsLawFirmPC@gmail.com

Page 11 of  14

factors, that is, the policies' specific provisions and the context and distribution of the policies.

If you determine that the policies did <u>not</u> create an implied contract between the parties, then there can be no breach of contract and plaintiff is not entitled to damages. If, on the other hand, you determine that the policies <u>did</u> create an implied contract between the parties, you must then make the second determination, that is, whether defendant breached the contract. I will instruct you in a moment concerning the monetary damages issue.

<u>Whether Defendant Breached the Contract</u>

Plaintiff claims that the defendant breached its policies and practices by terminating her employment without "good cause."

You must determine whether "good cause" existed for plaintiff's termination under the policy terms. Specifically, defendant contends that plaintiff engaged in irresponsible and unprofessional behavior. If you find that the plaintiff did engage in irresponsible and unprofessional behavior, then defendant did not breach the contract. If you find that the plaintiff did not engage in irresponsible and unprofessional behavior, then the defendant breached the contract.

### **DAMAGES**

The word "damages" refers to any monetary compensation to be awarded to the plaintiff for harms that were proximately caused by the defendants' wrongful acts. The basic principle of damages is that a person who has been wronged may recover just and adequate compensation for all of the losses that were caused by the defendant. The purpose

Watts Law Firm PC, PO Box 270, Woodstock VT 05091-0270
Tel (802) 457-1020   Fax (802) 432-1074  Email: WattsLawFirmPC@gmail.com

Page 12 of 14

of compensation is to restore a person damaged, as nearly as possible, to the position she would have been in had the wrong not occurred.

Where the amount of damages is capable of being calculated in dollars and cents, the plaintiff must demonstrate the amount of her loss in dollars and cents. You may not award damages that are based on sympathy, or otherwise speculative or conjectural, rather than supported by the evidence.

Please note that the fact that I am instructing you about damages should not be considered by you as an indication of how you should decide the issue of liability. Please also note that any amount of recovery suggested by the attorneys is not evidence. You need not adopt the approaches they have suggested. As the jury, it is your obligation to arrive at an amount that is supported by the evidence and fair to both of the parties. The amount of damages is for you to decide.

Dr. Connors seeks damages for what is commonly referred to as "back pay." This is the amount of wages and benefits she would have earned from the date she was discharged through the present date. You should include the value of any benefits that she would have earned if you determine that she would have remained in the defendants' employment.

Dr. Connors also seeks damages for "front pay," meaning future lost wages for some period beyond the date of the trial. Any award of future lost wages must represent a reasonable estimate based upon the evidence, taking into consideration such factors as the plaintiff's prospects for future employment with the defendants, the amounts she would have earned at defendants had she not been discharged, the period within which she might have by reasonable efforts become re-employed at some other suitable job, and the

Watts Law Firm PC, PO Box 270, Woodstock VT 05091-0270
Tel (802) 457-1020   Fax (802) 432-1074   Email: WattsLawFirmPC@gmail.com

Page 13 of 14

anticipated length of her working lifetime.

You should reduce the award of "back pay" and "front pay" by the amount of any wages she earned in alternate employment.

If you award damages for "front pay," you must determine the "present value" of that award, because it represents payment now for a loss that will not occur until some future date. Essentially, Dr. Connors will be reimbursed in advance for the future losses. In order to adjust this award to a present value, you must discount or reduce the future lost wages award by taking (1) the interest rate or return that Dr. Connors could reasonably expected to receive on an investment of the lump-sum payment, together with (2) the period of time over which the future loss is expected to occur. Your verdict must be for this reduced amount, which represents the present value of your award.

Again, the fact that I have instructed you on the proper measure of damages in this case should not be considered an indication of any view of mine as to how you should decide this case. These instructions have only been given for your guidance, in the event that you should find for the plaintiff on the issue of liability. If you find that the plaintiff has not satisfied her burden with respect to that issue, then you must return a verdict in favor of the defendant and you will not consider damages.

Dated:   10/16/13  .                                    /s/Norman E. Watts  
                                                                                Norman E. Watts, Esq.  
                                                                                Watts Law Firm, PC  
                                                                                PO Box 270  
                                                                                Woodstock VT 05091  
                                                                                (802) 457-1020  
                                                                                wattslawfirmpc@gmail.com  
                                                                                Attorney for Plaintiff